STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
                                           SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER     CASE NO.

2021 JAN 21 A 10:19

TO SERVE CONTRACTING, LLC, *as assignee of*
ST. JOHN'S EPISCOPAL CHURCH,

                 Plaintiff,                           **COMPLAINT**
                                                       (Jury Trial Demanded)
v.

THE CINCINNATI INSURANCE COMPANY;
SUSAN HUGHES, *individually and as
employee/agent of CIC*; JACKSON HILL,
*individually and as employee/agent of CIC*;
UNKNOWN MANAGERS, ADMINISTRATORS,
ESTIMATORS, CLAIMS REPRESENTATIVES
AND ADJUSTERS OF DEFENDANT THE
CINCINNATI INSURANCE COMPANY
(COLLECTIVELY REFERRED TO AS
DEFENDANTS DOE), *individually and as
employee/agent of CIC*; GRECCO
CONSTRUCTION CONSULTANTS, LLC; EDT
ENGINEERS, P.C.; and THE CENTURY SLATE
COMPANY,

                 Defendants.

TO:     **DEFENDANTS ABOVE-NAMED**

         Plaintiff To Serve Contracting, LLC, as assignee of St. John's Episcopal Church, complaining of above-named Defendants, would respectfully show unto this Court:

### NATURE OF ACTION AND RELIEF SOUGHT

         1.     On September 14, 2018, Hurricane Florence hit the North Carolina coast and inland areas. St. John's Episcopal Church's property, located at 1219 Forest Hills Drive, Wilmington, NC, was damaged by the storm. Prior to the hurricane, Defendant Cincinnati Insurance Company contracted with St. John's Episcopal Church to insure the St. John's Episcopal Church's property against this type of damage. After the storm, St. John's Episcopal

1

Church filed a claim with Defendant Cincinnati Insurance Company. Defendant Cincinnati Insurance Company refused to fully compensate its insured for benefits due under the contract for its loss and damages, including undisputed portions of the claim.



Ex. A - The front of the St. John's Episcopal Church

## PARTIES

2.  Plaintiff To Serve Contracting, LLC (hereinafter "Plaintiff") is a restoration contractor with its principle office located in New Hope, Minnesota, and is engaged in the business of exterior restoration of buildings, real estate, facilities, and structures.

3.  St. John's Episcopal Church (hereinafter "St. John's" or the "Church") is a church with insured property located in Wilmington, North Carolina.

4.  Defendant Cincinnati Insurance Company ("Defendant Cincinnati") is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in Fairfield, Ohio and is a citizen of Ohio. Upon information and belief, Defendant Cincinnati is licensed to do business and doing business in North Carolina.

5.  At all times pertinent hereto, Defendant Cincinnati has been involved in the issuance, marketing, selling, and delivery of insurance policies in North Carolina, including

2

policies insuring property, lives, and interests in North Carolina as described in N.C. Gen. Stat. §58-3-1, and the policy at issue here.

6. Upon information and belief, Defendant Susan Hughes is a citizen and resident of North Carolina.

7. Upon information and belief, Defendant Jackson Hill is a citizen and resident of North Carolina.

8. Upon information and belief, Defendants Doe, the unknown managers, administrators, estimators, claims representatives and adjusters are citizens and residents of the United States.

9. Defendant Grecco Construction Consultants, LLC ("Grecco") is a limited liability corporation organized and existing under the laws of the State of Tennessee. Upon information and belief, Defendant Grecco is licensed to do business and doing business in North Carolina.

10. Defendant EDT Engineers, P.C. ("EDT") is a professional corporation organized and existing under the laws of the State of North Carolina and is licensed to do business in this state.

11. Defendant The Century Slate Company ("Century") is a corporation organized and existing under the laws of the State of North Carolina and is licensed to do business in this state.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over the claims asserted herein pursuant to N.C. Gen. Stat. §§ 7A-240 & 7A-243. The claims are civil in nature and the amount in controversy exceeds twenty-five thousand dollars ($25,000).

13. Personal jurisdiction over all Defendants is conferred upon and vested in this Court by virtue of N.C. Gen. Stat. § 1-75.4(1)(d), as all Defendants are engaged in substantial activity within North Carolina, and N.C. Gen. Stat. § 1-75.4(10)(a) and (b), as this matter arises out of contracts of insurance between Defendant Cincinnati and the Church, a resident of North Carolina at all relevant times during Hurricane Florence, which is the underlying event out of which Plaintiff's claims arise.

14. Venue is proper in this Court pursuant to N.C. Gen. Stat. § 1-82.

## STATEMENT OF FACTS

15. St. John's Episcopal Church owns property used for religious worship and other purposes located at 1219 Forest Hills Drive, Wilmington, North Carolina ("insured property").

16. On September 14, 2018, with the landfall of Hurricane Florence, New Hanover County, North Carolina experienced extensive high winds in excess of 100 miles per hour, maximum sustained winds near 90 miles per hour, and more than 30 inches of rain.[1]

17. The State of North Carolina reported 42 fatalities due to the hurricane and preliminary damage estimates of $16.7 billion.[2]

18. New Hanover County Environmental Management estimated over 1.2 million cubic yards of tree and home debris was collected after Hurricane Florence.[3]

19. Hurricane Florence's direct force of wind and rain caused debris to collide with the church, damaging the building exterior and interior, as torrential rains entered the insured property.

---

[1] https://www.weather.gov/ilm/HurricaneFlorence (last visited on December 10, 2020).
[2] *Id.*
[3] *Id.*

4

20. As a direct and proximate result of the above, the Church's roof and the property contained within were damaged.

21. To mitigate the damage, the Church then contracted to replace missing roof tiles and address the water infiltration.

22. Prior to the September 14, 2018, landfall of Hurricane Florence, Defendant Cincinnati contracted with the Church to insure the Church's property against this type of damage for consideration received, as evidenced by the insurance policy numbered EPP0260820 (the "Policy").

23. Prior to September 14, 2018, the Church was the named insured on said policy of insurance, and that on September 14, 2018, said policy was in full force and effect.

24. The issuance of this insurance policy by Defendant Cincinnati created a mutually binding contract of insurance between the Church and the Defendant Cincinnati and gave rise to the contractual relationship between the Church and the Defendant Cincinnati.

25. When the Church filed a claim with Defendant Cincinnati, Cincinnati assigned adjuster Defendant Susan Hughes to work on the Church's claim.

26. Upon inspection of the insured property, Defendant Hughes observed exterior roof damage and building interior damages.

27. Upon receipt of an estimate for the roof replacement from Plaintiff To Serve, Defendant Cincinnati assigned Defendant Jackson Hill, a claims representative, to work on the Church's claim.

28. Upon inspection of the insured property, Defendant Hill and Mark Adams of Grecco Construction Consultants observed roof damage and noted such in a report.

29. The Grecco report includes, but is not limited to, the following roof observations:

    a. Our inspection revealed that some pieces of the slate roofing tiles were cracked or missing…

    b. Our inspection further revealed that areas of the roofing tiles had been repaired…

    c. Damages to the interior were noted from water intrusion around…roof penetrations causing water stains and surface deterioration.

30. However, while Grecco observed roof damages and created an estimate for interior repairs, the Grecco report and estimate does not include any estimates to repair the observed roof damage.

31. Upon information and belief, Defendants Doe were the unknown managers, administrators, estimators, claims representatives and adjusters assigned to the Church's claim.

32. At all times relevant hereto, Defendants Hughes, Hill and Doe were servants, agents, or employees of Defendant Cincinnati, and were acting within the course and scope of said service, agency, employment, thereby making Defendant Cincinnati liable for acts or omissions of Defendants Hughes, Hill and Doe under the theory of *respondeat superior*.

33. Thereafter, Defendant Cincinnati retained Beau Menard of EDT Engineers, P.C. ("EDT") to perform an inspection of the insured property.

34. Upon inspection of the insured property, Beau Menard of EDT observed roof damage and noted such in a report.

35. The EDT report includes, but is not limited to, the following roof observations:

    a. Multiple locations were identified where large areas of tiles were replaced and/or repaired;

    b. A majority of the repairs consisted of replacing full tiles;

6

Case 7:21-cv-00039-BO   Document 1-2   Filed 03/05/21   Page 6 of 17

    c. Discrete locations were identified where individual tiles were missing; and

    d. Multiple locations of displaced tiles were also identified;

36. While EDT provided a report of its observations, it did not provide an estimate for any repairs, interior or exterior.

37. After the above-described incident, subsequent inspections, and lack of a roof repair estimate from Hughes, Hill, Grecco, or EDT, Defendant Cincinnati denied coverage for all damages.

38. The Church, however, requested Defendant Cincinnati to reconsider the Church's claim and re-inspect the church.

39. Defendant Cincinnati retained John Walter of The Century Slate Company to perform an inspection of the insured property.

40. Upon inspection of the insured property, Century observed roof damage.

41. The Century report includes, but is not limited to, the following roof observations:

    a. Currently there are about 800 to 1,000 needed repairs…;

    b. This slate has a very small exposure 3.5" and 4.5" and it would take a significant amount of sustained wind to cause damage;

    c. Typical signs of wind damaged/chattered slate roof would be multiple broken corners, a large debris field of broken pieces after the event, many loose, missing or displaced (askew) slates, as well as slates sidelapped over one another;

    d. …I would estimate there are about 800-1000 repairs total on all the natural slate roofs… This includes slates that are missing, cracked, or loose. These slates could be storm damaged…;

7

e. There are some broken or missing ridge slates…;

f. Leaks #1, #2, and #5 as noted on the roof plan appear to be soaking through the masonry walls as which can occur during periods of…wind driven rain;

g. Leaks #3 and #4 as noted on the roof plan appear to be caused by a combination of broken slates and separation of the ridge slates…; and

h. Slate repairs:

   i. Replacement of up to 1000 slates all over the roof…

   ii. This includes slates which are… storm damaged…

42. Almost a year after Hurricane Florence's landfall in Wilmington, the subsequent property damage, mitigation, inspections, reports, estimates, denial of insurance benefits, and re-inspection, Defendant Cincinnati refused to fully compensate the Church for benefits due under the insurance contract.

43. In order to mitigate damages to the Church's insured property, the Church started repairs. The Church, "experiencing difficulties in obtaining satisfactory settlement of its insurance claim with respect to damage that resulted from Hurricane Florence," arranged payment for repairs by assigning to Plaintiff To Serve Contracting, LLC "all of [its] claims under the Policy with respect to its Hurricane Florence damage claims." *See* St. John's Assignment of Insurance Benefits and Claim.

44. After its first denial of insurance benefits, even though Defendant Cincinnati possessed knowledge of the storm damage at the insured property, which its agents and retained contractors personally observed, Defendant Cincinnati was issued a report by CORE Forensics detailing the storm damage.

8

45. Despite possession of the Core report, and other information detailing the storm damage, Defendant Cincinnati again denied the insurance claim.

46. Defendant Cincinnati refused and still refuses to fully compensate Plaintiff for benefits due under the insurance contract for the Church's loss and damages.

## FIRST CLAIM FOR RELIEF
(Breach of Contract Against Defendant Cincinnati)

47. The foregoing allegations are re-alleged and incorporated herein.

48. At all times relevant, St. John's had a valid contract of insurance with Defendant Cincinnati, whereby St. John's agreed to make and did make premium payments to Defendant Cincinnati in exchange for its promise to indemnify St. John's for its loss and damage including, but not limited to, storm damage.

49. At all times relevant, St. John's was current on all premiums required under the Policy and the Policy was in full effect.

50. Beginning on September 14, 2018, Hurricane Florence's direct force of wind and rain caused debris to collide with the church, damaging the building exterior and interior, as torrential rains entered the insured property.

51. As a direct and proximate result of the above, the Church's roof and the property contained within were damaged.

52. To mitigate the damage, the Church then contracted to replace missing roof tiles and address the water infiltration.

53. Plaintiff's reported its loss to Defendant Cincinnati.

54. Plaintiff's loss was a Covered Cause of Loss under the policy.

55. Defendant Cincinnati denied Plaintiff's claim for benefits.

9

56. Defendant Cincinnati's conduct as described above was in violation of the insurance policy and constitutes a breach of contract.

57. As a direct and proximate result of Defendant Cincinnati's breach of contract, St. John's has sustained damages as set forth herein.

58. Plaintiff is entitled to a judgment against Defendant Cincinnati for the full amount of their actual damages and attorneys' fees.

## SECOND CLAIM FOR RELIEF
(Bad Faith Denial of Insurance Benefits Against Defendant Cincinnati)

59. The foregoing allegations are re-alleged and incorporated herein.

60. North Carolina recognizes a cause of action for bad faith refusal to settle a claim. *See, e.g. Dailey v. Integon General Ins. Corp., 75 N.C. App. 387, 331 S.E.2d 148 (1985).*

61. Defendant Cincinnati's agents and contractors (Hughes, Hill, Grecco, EDT, and Century) inspected the insured property on several occasions and thereafter were aware of the damage caused by the hurricane.

62. After Defendant Cincinnati inspected the insured property, CORE Forensics, LLC inspected it and produced a report containing its observations and conclusions.

63. Defendant Cincinnati possessed knowledge of the storm damage at the insured property, which its agents and retained contractors personally observed.

64. Further, Defendant Cincinnati was provided with a report prepared by CORE Forensics, LLC detailing the damage Hurricane Florence caused at the insured property.

65. The CORE report includes, but is not limited to, the following observations of damage based on high peak gusts and sustained wind:

    a. points of impact of windborne debris;

    b. visible impact marks;

10

c. windborne debris caused opening allowing water to enter the building;

d. multiple areas of windborne debris on EPDM roof;

e. blown off copper chimney cap damaged slate tiles;

f. drip edge along with EPDM was dislodged and curled back onto roof;

g. wind-blown debris impact to slate tiles;

h. multiple areas of windborne debris impact on the building;

i. repaired tiles;

j. missing slates;

k. damaged slates;

l. chimney repairs;

m. water from windborne debris impacts exiting on top of slates from damaged area above;

n. cracked, broken and lifted (slates with windborne debris lodged underneath) slates;

o. water exiting through exterior cladding of chimney as chimney cap blown off;

p. loose bridging near roof access hole;

q. loose bridging support; and

r. various interior sheet rock cracking due to building movement.

66. Defendant Cincinnati failed to settle any, even undisputed portions, of Plaintiff's insurance claims, in violation of the Policy.

67. Under the Policy, Defendant Cincinnati owed to Plaintiff a duty to act in good faith and to deal fairly; Defendant Cincinnati breached this duty when it negligently, willfully,

11

recklessly, unreasonably, without just cause, and/or in bad faith refused to pay benefits due under the Policy.

68. Upon information and belief, Defendant Cincinnati did not attempt in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's insurance claim.

69. Defendant Cincinnati's decision to deny Plaintiff's insurance claim is based in part on information provided by individuals not qualified to provide professional evaluation and/or inspection details and estimates.

70. By reason of Defendant Cincinnati's conduct, Plaintiff's directly and proximately suffered actual damages including, but not limited to, loss of insurance benefits, loss of use of insurance benefits, unnecessary litigation expenses, and other consequential damages as set forth herein.

71. Plaintiff is entitled to a judgment against Defendant Cincinnati for the full amount of their damages, including all actual and consequential damages.

72. Defendant Cincinnati's conduct also warrants an award of punitive damages.

73. Because of Defendant Cincinnati's conduct, Plaintiff is entitled to an award of attorneys' fees against Defendant Cincinnati pursuant to N.C. Gen. Stat Ann. § 6-21.1.

### THIRD CLAIM FOR RELIEF
(Unfair and Deceptive Trade Practices Violation Against Defendant Cincinnati)

74. The foregoing allegations are re-alleged and incorporated herein.

75. "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. Ann. § 75-1.1.

76. The sale of insurance in the State of North Carolina affects commerce within North Carolina.

77. North Carolina recognizes a cause of action for Unfair and Deceptive Trade Practices Act under N.C. Gen. Stat. § 75-1.1 ("UDTPA") for conduct described by, in, and outside N.C. Gen. Stat. § 58-63-15 (the "Unfair Claims Act").

78. Defendant Cincinnati has engaged in unfair and deceptive trade acts and practices in violation of the UDTPA by:

    a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

    b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

    c. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

    d. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;

    e. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

    f. Compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

    g. Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage, in order to influence settlements under other portions of the insurance policy coverage;

      h. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

      i. Failing to pay undisputed portions of Plaintiff's insurance claim;

      j. Failing to pay benefits due under the Policy; and

      k. Negligently, willfully, recklessly, unreasonably, without just cause, and/or in bad faith refusing to pay benefits due under the Policy.

79. Under the Policy, Defendant Cincinnati owed to Plaintiff a duty to act in good faith and to deal fairly.

80. By reason of Defendant Cincinnati's conduct, Plaintiff directly and proximately suffered actual damages including, but not limited to, loss of insurance benefits, loss of use of insurance benefits, unnecessary litigation expenses, and other consequential damages as set forth herein.

81. Plaintiff is entitled to a judgment against Defendant Cincinnati for the full amount of their damages, including all actual and consequential damages.

82. Defendant Cincinnati's conduct also warrants an award of treble damages pursuant to N.C. Gen. Stat. Ann. § 75-16.

83. Because of Defendant Cincinnati's conduct, Plaintiff is entitled to an award of attorneys' fees against Defendant Cincinnati pursuant to N.C. Gen. Stat Ann. § 75-16.1.

### FOURTH CLAIM FOR RELIEF
(Negligence Against All Defendants)

84. The foregoing allegations are re-alleged and incorporated herein.

85. Defendants owe St. John's certain duties to properly handle the Church's claims arising out of the special relationship and confidence of trust placed on them by St. John's, the

14

covenant and duty of good faith and fair dealing implied as a matter of law in contracts of insurance or undertook such duties. Defendants also owe St. John's a duty not to force St. John's to maintain a lawsuit that forces St. John's to incur legal fees.

86. Defendants were negligent, reckless, grossly negligent, willful and wanton in their investigation and handling of St. John's claim in one or more of the following particulars:

    a. In failing to offer to pay the amount of their evaluation of the claim;

    b. In failing to make an appropriate offer to Plaintiff after being put on notice of all relevant facts and information upon which to provide a good faith response to the same;

    c. Upon information and belief, in considering improper factors when evaluating the claim and forcing St. John's to file suit;

    d. In forcing Plaintiff to file suit by not making a reasonable offer (or any offer) while knowing the great likelihood that the Church's property would sustain further damage;

    e. In failing to make a reasonable offer (or any offer) when they had no reasonable basis upon which to do so;

    f. In failing to evaluate the claim properly given the information then available;

    g. Upon information and belief, in violating their own policies, procedures, and/or guidelines regarding investigation and handling of similar claims;

    h. In failing to exercise the degree of care, caution, and good faith that a reasonably prudent insurance carrier, manager, or adjuster would exercise under the same or similar circumstances;

    i. In placing their own interest ahead of those of the insured; and

j. In failing to place the insured' interests ahead of those of Defendants.

87. By reason of Defendant's negligence, recklessness, gross negligence, willfulness, and wantonness, the Church directly and proximately suffered actual damages including, but not limited to, loss of insurance benefits, loss of use of insurance benefits, consequential damages, and other damages as set forth above.

88. Plaintiff is entitled to a judgment against Defendants for the full amount of their actual damages, as well as for punitive damages.

## FIFTH CLAIM FOR RELIEF
(Civil Conspiracy Against Defendants Cincinnati, Grecco, EDT, and Century)

89. The foregoing allegations are re-alleged and incorporated herein.

90. A combination of Defendants conspired to injure St. John's. Defendants had a common design or plan to make an example out of the Church's case to show other claimants and attorneys that Defendant Cincinnati will not settle but will instead force claimants to file suit regardless of the legitimacy of the claimant's injuries and damages and to postpone and delay payments of the Church's claim, thereby causing the Church's property to sustain additional damage with the intent to force the Church to settle for less than the full amount of the Church's claim.

91. A combination of Defendants conspired to act in furtherance of said design or plan for the purpose of injuring the Church by failing and refusing to settle their claim when Defendants knew the severity of the damage to the Church's property.

92. As a direct and proximate result of above-named Defendants' civil conspiracy, the Church has suffered damages as described above including, but not limited to, loss of insurance benefits, loss of use of insurance benefits and litigation expenses.

93. Plaintiff is also entitled to punitive damages because Defendants acted with actual malice in planning their course of action and exercising their course of action against the Church.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following:

A. A trial by jury on all claims so triable;

B. Actual, compensatory, punitive and treble damages;

C. An award of attorney's fees and costs, as provided by law;

D. Pre- and post-judgment interest at the highest rate allowed by law; and

E. Such other and further relief as this Court may deem just, equitable, or proper.

Respectfully Submitted,

ANASTOPOULO LAW FIRM, LLC

BY _____
Eric Poulin (NCSB # 43861)
Email: eric@akimlawfirm.com
Thomas Godfrey (NCSB # 55907)
Email: tom@akimlawfirm.com
Anastopoulo Law Firm
32 Ann Street
Charleston, SC 29403
(843) 614-8888

**ATTORNEYS FOR PLAINTIFF**

Charleston, South Carolina
January 14, 2021